1 | Joshua B. Swigart (SBN 225557)
2 | **SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
3 | San Diego, CA 92108
P: 866-219-3343
4 | Josh@SwigartLawGroup.com

5 |
Daniel G. Shay (SBN 250548)
6 | **LAW OFFICE OF DANIEL G. SHAY**
2221 Camino del Rio S, Ste. 308
7 | San Diego, CA 92108
P: 619-222-7429
8 | DanielShay@TCPAFDCPA.com

*Additional attorneys on signature page*

*Attorneys for Plaintiffs
and the Putative Classes*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY MOORE, JR & CECELIA LAHR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>T. ROWE PRICE RETIREMENT PLAN SERVICES, INC.,<br><br>Defendant. | Case No: 22-CV-1673-GPC-MDD<br><br>**PLAINTIFFS' OPPOSITION TO T. ROWE PRICE RETIREMENT PLAN SERVICES, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date: March 24, 2023<br>Time: 1:30 PM<br>Judge: Hon. Gonzalo P. Curiel<br>Ctrm: Courtroom 2D |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUHTORITIES ......................................................................................... ii

I. INTRODUCTION ............................................................................................. 1

II. Plaintiff Lahr Has Standing to Bring her Claims ............................................... 2

III. Plaintiffs State a Claim under California Law .................................................. 4

    A. Section 637.3 Applies to Defendant's Voice Biometrics System ............ 4

        1. Defendant's Voice Biometrics System records and analyzes Voice Prints ................................................................................................. 4

        2. Defendant's Voice Biometrics System is implemented for the purpose of lie detection ...................................................................... 7

        3. Defendant's conduct occurred "in this state" ................................. 10

IV. CONCLUSION ................................................................................................ 12

# TABLE OF AUHTORITIES

**Cases**

*Ashcroft v. Iqbal,*
  129 S.Ct. 1937, 1949 (2009) ................................................................................4

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, 555-556 (2007) ..............................................................................4

*Brennon B. v. Superior Ct.,*
  13 Cal. 5th 662 (2022) .........................................................................................4

*City and County of San Francisco v. Farrell,*
  32 Cal.3d 47 (1982) .............................................................................................5

*City of Long Beach v. Mansell,*
  3 Cal. 3d 462 (1970) ..........................................................................................10

*Diamond Multimedia Sys., Inc. v. Superior Court,*
  19 Cal.4th 1036 (1999) ................................................................................10, 11

*Garaux v. Pulley,*
  739 F.2d 437 (9th Cir. 1984) ................................................................................3

*In re Katz Interactive Call Processing Pat. Litig.,*
  883 F.Supp.2d 935 (C.D. Cal. 2010) ....................................................................7

*Kearney v. Salomon Smith Barney, Inc.,*
  39 Cal.4th 95 (2006) ..........................................................................................11

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) .............................................................................................2

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) .............................................................................................2

*Matrixx Initiatives, Inc. v. Siracusano,*
  131 S.Ct. 1309 (2011) ..........................................................................................4

*Mays v. City of Los Angeles,*
  43 Cal.4th 313 (2008) ..........................................................................................4

*Meridian Fin. Servs., Inc. v. Phan,*
  67 Cal. App. 5th 657 (2021) ................................................................................9

*People v. Barksdale,*
  No. C065880, 2012 WL 50643 (Cal. Ct. App. Jan. 10, 2012) .............................8

*People v. Cook,*
  228 Cal. App. 2d 716 (1964) ...............................................................................9

*People v. King,*
  266 Cal.App.2d 437 (1968) .............................................................................5, 8

*People v. Law*,
 40 Cal.App.3d 69 (1974) ..................................................................................5, 8

*People v. Lee*,
 95 Cal. App. 4th 772 (2002) ...................................................................................8

*People v. Valladoli*,
 13 Cal.4th 590 (1996) .............................................................................................4

*Pieri v. City & Cnty. of San Francisco*,
 137 Cal.App.4th 886 (2006) ...................................................................................5

*Rosenthal v. Dean Witter Reynolds, Inc.*,
 908 P.2d 1095 (Colo. 1995) ..................................................................................10

*Safe Air for Everyone v. Meyer*,
 373 F.3d 1035 (9th Cir. 2004) ................................................................................3

*Shafir v. Continuum Health Partners, Inc.*,
 57 F.Supp.3d 325 (S.D.N.Y. 2014) ........................................................................2

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016) ............................................................................................2

*Starr v. Baca*,
 652 F.3d 1202 1216 (9th Cir. 2011) .......................................................................4

*White v. Lee*,
 227 F.3d 1214 (9th Cir. 2000) ................................................................................2

**Statutes**

Cal. Penal Code § 637.3 ..............................................................................................5, 7, 9

Cal. Corp. Code § 25400 .................................................................................................10

**Other Authorities**

"Voiceprint," Merriam-Webster.com Dictionary, Merriam-Webster ...........................6

*Criminal Resource Manual*, section 258 ........................................................................6

U.S. Const art. III, § 2 .......................................................................................................2

**Rules**

Fed. R. Civ. R § 56 ...........................................................................................................3

Plaintiffs Gregory Moore, Jr. and Cecelia Lahr respectfully submits this Opposition to Defendant T. Rowe Price Retirement Plan Services, Inc.'s Motion to Dismiss to Plaintiff's Complaint [ECF No. 10] ("Motion"):[1]

I. **INTRODUCTION**

This case revolves around the legality of Defendant's "Voice Biometrics" system examines "voice prints" of any account holder who calls, in order to determine whether individuals are who they are claim. *See generally* Plaintiffs' Complaint, ECF No. 1 ("Compl."). This Voice Biometrics system the MyVoice system is an fraud prevention tool, that evaluates several criteria for each caller, including voice characteristics, caller behavior, call location, and device characteristics. *Id.,* at ¶¶ 21-22. Essentially, it collects "Biometric Identifiers" such as "Voiceprints" that it uses to "identify and authenticate you" and for "security and risk management, fraud prevention, and similar purposes." *Id.* This system largely works without a callers' knowledge and with the callers' written consent. *Id.*, at ¶¶ 27, 32-34.

While the Voice Biometrics system is new, the technology on which it is based has a long history. Nor is Defendant's particular application of the technology novel in the law. Prosecutors and police have used voice-print technology since the 1960s to identify individuals and test the veracity of statements.

It was likely this use of voice prints in criminal trials that prompted the California Legislature to limit their use outside the courtroom. In 1978, California enacted section 637.3 of the Penal Code, with specifically prohibits the use of any system that records or analyzes "voice prints" to determine the truth or falsity of statements, without prior express written consent. Yet, Defendant failed to secure either express written consent or prior consent for use of its Voice Biometrics system.

The main crux of Defendant's Motion is that its Voice Biometrics system does not fall within the scope of section 637.3. Plaintiffs concede that this is a novel issue,

---

[1] Plaintiffs do not oppose Defendant's Request for Judicial Notice [ECF No. 10-5].

that has yet to be addressed by either the Ninth Circuit or a California appellate court. However, Plaintiffs contends that Defendant's Voice Biometrics system records a quintessential "voiceprint" and is designed to determine the truth of a callers statement, identifying themselves. Accordingly, Defendant violates section 637.3.

## II. PLAINTIFF LAHR HAS STANDING TO BRING HER CLAIMS

"Federal courts are courts of limited jurisdiction," so they "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because the Constitution limits Article III federal courts' jurisdiction to "cases" and "controversies," a plaintiff's pleadings must establish standing. U.S. Const art. III, § 2. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

As Defendant notes, a defendant can bring either a facial or factual challenge to subject-matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Motion at p. 6. For standing purposes, Defendant does not challenge the underlying legal theory of injury or redressability. Instead, Defendant submits the McCaslin declaration to suggest that Plaintiff Lahr's voice was not recorded, and she therefore he lacks standing. Motion at pp. 6-7. Defendant, however, has confused Article III standing with Rule 56 for summary judgment. *See Shafir v. Continuum Health Partners, Inc.*, 57 F.Supp.3d 325, 327 (S.D.N.Y. 2014). The Supreme Court held that for standing purposes, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561.[2] Accordingly, general allegations that Plaintiff Lahr called Defendant may also

---

[2] To hold otherwise, would turn every Motion to Dismiss into a mini-trial on injury-

suffice here. *Id.* (it is only at summary judgment that "plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'"). Plaintiff Lahr further alleges that Defendant has been secretly using its Voice Biometrics system and did not disclose that it was using the technology until years later. Compl. at ¶¶ 28-32. This is sufficient to confer standing.

Defendant attempts to sidestep this Supreme Court precedent by citing cases, such as *Safe Air for Everyone*, for the proposition that "[i]n reviewing a factual challenge to jurisdiction, the court can review evidence beyond the complaint without converting the motion to dismiss into one for summary judgment." Motion at p. 6 *citing Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Yet, Defendant mischaracterizes the case's holding. *Safe Air for Everyone* specifically held that Defendant cannot convert a merits issue, into a standing issue, just so it may be resolved through evidence on a motion to dismiss:

> We have held that a "[j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action."

*Id.*, at 1039-40. Indeed, in *Safe Air for Everyone,* the Ninth Circuit overruled the district court's characterization of its dismissal under Rule 12(b)(1) when the court reviewed evidence outside the complaint. *Id.* Here, Defendant should not be allowed to rely on self-serving and conclusory declaration at this stage of the litigation.

---

in-fact. But even under a summary judgment standard, Plaintiff Lahr would be entitled to notice and the opportunity to take discovery and present contradictory evidence. *See Garaux v. Pulley,* 739 F.2d 437, 438 (9th Cir. 1984) (converting a Rule 12(b)(6) Motion to a motion for summary judgment requires that the non-moving party "be afforded a reasonable opportunity to present all material made pertinent to such a motion by Rule 56."); Fed. R. Civ. Pro. 56(d) ("If a nonmovant shows by affidavit or declaration that, it cannot present facts essential to justify its opposition, the court may: … allow time to obtain affidavits or declarations or to take discovery.") & (f) (requiring "notice and a reasonable time to respond").

## III. PLAINTIFFS STATE A CLAIM UNDER CALIFORNIA LAW

When deciding a motion pursuant to Rule 12(b)(6), courts are directed to accept all factual allegations in the complaint as true and to draw any reasonable inferences in the light most favorable to the plaintiff. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-556 (2007). Ultimately, the Court may not dismiss a complaint in which the plaintiff has alleged "sufficient factual matter… to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). Plausibility exists when the alleged facts "raise a reasonable expectation that discovery will reveal evidence" of wrongdoing and "allow[s] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1312 (2011). Thus, the Ninth Circuit holds that the allegations only need to "give fair notice" of the plaintiff's legal and factual claims "to enable the opposing party to defend itself effectively" in a way. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Such a standard is met here.

### A. Section 637.3 Applies to Defendant's Voice Biometrics System

#### 1. Defendant's Voice Biometrics System records and analyzes Voice Prints

Plaintiffs generally agree that in analyzing a statute's scope, a court's "fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose." Motion at p. 8 *citing Brennon B. v. Superior Ct*., 13 Cal. 5th 662, 673 (2022). Of course, the starting point is "the actual words of the statutes in question, giving them a plain and commonsense meaning." *People v. Valladoli*, 13 Cal.4th 590, 597 (1996). If there is no ambiguity, then courts "presume the lawmakers meant what they said, and the plain meaning of the language governs." *Mays v. City of Los Angeles*, 43 Cal.4th 313, 321 (2008). Only if there is an ambiguity, does the Court "resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." *Id.*

Of course, under Section 367.3(a), Plaintiffs must establish that Defendant uses

a "system which examines or records in any manner *voice prints* or *other voice stress* patterns." Cal. Penal Code § 637.3(a) (emphasis added). Defendants argue that that under the *noscitur a sociis* canon, "voice prints" are a type of "voice stress pattern" and that its Voice Biometrics system does not record voice stress patterns. *See* Motion at pp. 9-10. However, this argument fails for two reasons.

First, interpreting "voice prints" as being the same as, and being coextensive with, "voice stress patterns" would render "voice prints" pure surplusage; a result that should be avoided. *City and County of San Francisco v. Farrell*, 32 Cal.3d 47, 54 (1982) ("In construing the words of a statute or constitutional provision to discern its purpose, the provisions should be read together; an interpretation which would render terms surplusage should be avoided, and every word should be given some significance, leaving no part useless or devoid of meaning."). Instead, the phrase "voice prints" should be given its plain meaning.

When section 637.3 was originally drafted in 1978, "voiceprints" was not novel term within the law. At that time, "voiceprints" were described as a particular method of electronically recording audio data to identify speakers in criminal cases. *See, e.g., People v. King,* 266 Cal.App.2d 437 (1968); *People v. Law*, 40 Cal.App.3d 69, 75 (1974). As a California Court of Appeal explained, "voiceprints" was defined as:

> A sound spectrogram (voiceprint) is produced by a machine known as a spectrograph. It is a basic tool for analyzing speech sounds. When the tape of a voice is properly fed through a spectrograph, a graph is produced which analyzes three main perimeters of speech: time, frequency and intensity of the frequency. [fn.] The examiner analyzes a spectrogram of the 'known' and 'unknown' voices to determine identity, *i.e.*, whether the known voice is the same as the unknown voice, or elimination, i.e., whether the known voice is not the same as the unknown voice.

*People v. Law*, 40 Cal.App.3d at 75–76. The Legislature is presumed to be aware of these cases when it enacted section 637.3 and was also aware of the technical definition discussed therein. *Pieri v. City & Cnty. of San Francisco*, 137 Cal.App.4th 886, 893 (2006).

And this definition has not changed over time. For example, the U.S. Department of Justice's *Criminal Resource Manual*, section 258, currently notes that voiceprints are produced by:

> A spectrograph transforms the energy used in the production of speech into a visual graph of acoustical energy. The spectrogram of an unidentified speaker is compared with that of an identified speaker in order to find similar patterns…

*Id.* (available at https://www.justice.gov/archives/jm/criminal-resource-manual-258-admissibility-spectrograms-voice-prints, last visited Jan. 31, 2023).

Even the Merriam-Webster dictionary, cited with approval by Defendant, offers a similar modern definition: "an individually distinctive pattern of certain voice characteristics that is spectrographically produced." "Voiceprint," Merriam-Webster.com Dictionary, Merriam-Webster (https://www.merriam-webster.com/dictionary/voiceprint, last accessed, Jan. 31 2023); *see also* Motion at p. 9. The Merriam-Webster dictionary also provides etymology of the term, "*voice* + finger*print*." *See, supra,* "Voiceprint," Merriam-Webster.com Dictionary. That is a unique set of voice characteristics capable to identify individuals, like a fingerprint.

Second, even if we were to give credence to Defendant's "voice prints" is "a type of voice stress pattern" argument, it would not alter the conclusion of this Court. As noted above, "voice prints" is a type of sound spectrogram which records various aspects of a human voice, such as time, frequency and intensity of the frequency. Such recordings innately record "voice stress pattern." But that does not prevent "voiceprints" to be interpreted as it is common understood: a sound-matching tool. Nor does Defendant offer any support that a "voice stress patterns" and "voice sound-matching" are mutually exclusive.

Accordingly, the plain meaning of "voice prints" should be given the same definition as its contemporaneous judicial (and technical) understanding: a

spectrographically recording of a voice used to identify a speaker.[3] Defendant's convoluted argument that "voice prints" is "a type of voice stress pattern" should not override the plain meaning of the term. *People v. Otto*, 2 Cal.4th 1088, 1108 (1992) ("Where, as here, legislative intent is expressed in unambiguous terms, we must treat the statutory language as conclusive; "no resort to extrinsic aids is necessary or proper."). This is especially true when Defendant does not offer any other competing definition of "voice prints" for purposes of the statute.

Here, Defendant can not possibly argue that it does not record and analyze "voice prints or other voice stress patterns." Cal. Penal Code § 637.3(a). As Defendant notes, its privacy policy specifically acknowledges that it collects "biometric identifiers" including "voiceprint[s]." Declaration of Randall W. Edwards ("Edwards Decl."), ECF Nos. 10-3, Ex. B at p. 14. Additionally, Defendant's own website describes that its Voice Biometrics system records "voice characteristics" and "caller behavior;" which presumably includes "voice stress patterns." *Id.*, Ex. A at p. 9. Accordingly, this initial element of section 637.3 is properly pled.

### 2. Defendant's Voice Biometrics System is implemented for the purpose of lie detection

But Plaintiffs must further establish that Defendant's Voice Biometrics system is designed "to determine the truth or falsity of statements" in order to state a claim under section 637.3. Cal. Penal Code § 637.3(a). Defendant suggests that section 637.3 only covers "lie detection," excluding Defendant's use of the voice prints as a means of identification. Motion, at pp. 15-19. Yet, "lie detection" does not exclude systems that ensure individuals are properly identifying themselves. The Voice Biometrics system is innately designed to prove the "truth or falsity" of a particular statement, namely that

---

[3] This same definition is used in more contemporaneous decisions. *See, e.g., In re Katz Interactive Call Processing Pat. Litig.,* 883 F.Supp.2d 935, 959 (C.D. Cal. 2010) (noting that voice prints are used for identification). Even Defendant uses the term "Voice Print" in the same manner of these fifty-year-old decisions. Edward Decl., Ex. B at p. 14 (describing a "voiceprint" as being used to "identify and authenticate you.").

- 7 -

OPPOSITION TO MOTION TO DISMISS  Case No. 3:22-CV-1673-GPC-MDD

accountholders are who are they claimed to be. *See* Compl. ¶ 32. Additionally, Defendant presents evidence that its Voice Biometrics system may be used for more than just identification purposes. Again, as noted above, Defendant's own privacy policy notes that it collects "Biometric Identifiers" such as "Voiceprints" that it uses to "identify and authenticate you" and for "security and risk management, fraud prevention, and similar purposes." *Id.*, at ¶ 22; *see also* Edwards Decl., Ex. B at p. 14. It would be hard to interpret "fraud prevention" as anything but the detection of false statements.

But even assume that Defendant's system only is used for identification purposes it, section 637.3 would still apply. Given that the Legislature specifically chose to include the term "voice prints" (a term that was traditionally used to describe a process that correctly identifies individuals by their voice), the Court should not create an unwritten exception for systems that examine the truth or falsity of self-identification statements from section 637.3. *King,* 266 Cal.App.2d 437; *People v. Law*, 40 Cal.App.3d at 75. Indeed, the original "lie detector"—polygraphs—have been used (or at least proposed to be used) to determine whether people were lying about the identity of individuals. *See, e.g., People v. Barksdale,* No. C065880, 2012 WL 50643 (Cal. Ct. App. Jan. 10, 2012) (unpublished); *People v. Lee*, 95 Cal. App. 4th 772, 785 (2002), as modified (Feb. 20, 2002). And polygraphs also look biometric indicators, such as blood pressure, pulse, respiration, and skin conductivity. Defendant's Voice Biometrics system should not be treated any different. Edwards Decl., Ex. A at p. 9 (the Voice Biometrics system reviews "voice characteristics" and "caller behavior").

Defendant extensively cites the legislative history of section 637.3 to support its position. Yet, the legislative history does not suggest that "voice prints" was not given its common understanding or that the section does not cover self-identification statements. Nor was legislature particularly concerned with the effectiveness of such devices, as Defendant suggests. Instead, as noted in the statute's author's letter to the Governor, the principal concern underlying this statute was privacy:

> A hand-held voice analyzer about the size of a pocket calculator can be an extremely effective law enforcement tool, *but people should not have to worry every time they start a conversation that their voice may be record for future use against them*.

Edwards Decl., Ex. C, p. 40 (emphasis added). Such concerns are not untethered from the realities of Defendant's Voice Biometrics system. Defendant's own website notes that its Voice Biometrics system is used to records their "voice characteristics" and "caller behavior." Edwards Decl., Ex. A, p. 9. And Defendant concedes that its Voice Biometrics system protects against fraud and identity theft. Motion at p. 3. Regardless of the purpose of the system, individuals should have control over their biometric information, including their voiceprint.

In this context, Defendant's policy arguments are also unavailing. Defendant argues that "[i]dentity theft and fraud pose growing and costly challenges for the public" and that it has an obligation to protect its accountholders. Motion at pp. 13-14. This is understandable. However, Plaintiffs' interpretation of section 637.3 would not render Defendant's Voice Biometrics system unworkable. Instead, Plaintiffs only suggest that Defendant comply with section 637.3's requirement that written consent be acquired before such systems are used. Cal. Penal Code § 637.3(a) (noting that voiceprints may be used with a person's "express written consent given in advance of the examination or recordation"). There is nothing to suggest that such as reading would be absurd.[4]

---

[4] Defendant challenges that its system could not work if section 637.3 is applicable because its "would have no way of knowing before using that technology whether the person whose voice it is examining is actually the customer who provided written consent." Motion at p. 14. There is good reason to believe that section 637.3 does not apply in such situations. *C.f. People v. Cook,* 228 Cal. App. 2d 716, 719 (1964) (noting that "the basic common law rule that, unless there is statutory language to the contrary, whenever lack of consent is a necessary element of a crime, the fact that consent is obtained through misrepresentation will not supply the essential element of non-consent."). Furthermore, there are a multitude of defenses to liability in such a case. *See, e.g., Meridian Fin. Servs., Inc. v. Phan*, 67 Cal. App. 5th 657, 685 (2021) (noting that the doctrine of unclean hands bars a plaintiff from recovering for their own

### 3. Defendant's conduct occurred "in this state."

Defendant next argues that it is not subject to section 637.3 because the statute is limited "to conduct occurring in California." Motion at pp. 18-20. Defendant bases its argument on the language of the statute that provides that "[n]o person or entity *in this state* shall use any system which examines or records in any manner voice prints…." *Id.* (emphasis added). This argument is not supported by the law.

In fact, the sole case cited by Defendant supports the opposite position. *Id.* In *Diamond* the court examined California Corporation Code, section 25400, which makes it "unlawful for any person, directly or indirectly, <u>in this state</u>: [¶] For the purpose of creating a false or misleading appearance of active trading in any security or a false or misleading appearance with respect to the market for any security…." *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal.4th 1036, 1050-51 (1999) citing Cal. Corp. Code, § 25400. The Court held that this statute applies to both securities purchases made within the state, as well as out-of-state purchasers who transacted within California. *See id.* at 1065.

In doing so, the *Diamond* Court held <u>that it was not the location of the parties that is dispositive, but the place of the transaction</u> (or the place of harm). *Id.*, at 1050-51 ("A sale occurs in California if the offer emanates from this state. Thus, a sale occurs 'in this state' even if the purchaser is in, and communicates acceptance of the offer to sell from, New York."). To further reinforce this conclusion, the *Diamond* Court cited with approval *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1104 (Colo. 1995), which held that Colorado law applied to misleading statements made with regards to securities transactions that occurred in the state; it was irrelevant that the

---

misconduct); *City of Long Beach v. Mansell*, 3 Cal. 3d 462, 488-89 (1970) (equitable estoppel precludes "party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it"). But such concerns are hypothetical. Nowhere does Defendant suggest that it seeks written consent before recording and analyzing in customer's voiceprints.

- 10 -

OPPOSITION TO MOTION TO DISMISS        Case No. 3:22-CV-1673-GPC-MDD

purchase was made through a broker in Pennsylvania. *Diamond Multimedia Sys., Inc., supra,* at 1062-63. Accordingly, *Diamond* held (even in statutes with an express "in this state" limitation) that the place of the transaction governs, not the physical location of the parties.

This conclusion is only reinforced by California Supreme Court precedent regarding CIPA. As noted in *Kearney v. Salomon Smith Barney, Inc.*:

> A person who secretly and intentionally records such a conversation from outside the state <u>effectively acts within California</u> in the same way a person effectively acts within the state by, for example, intentionally shooting a person in California from across the California–Nevada border. (See, for example, *State v. Hall* (1894) 114 N.C. 909, 19 S.E. 602, 602–606; *see generally Leflar*, American Conflicts Law (4th ed.1986) § 111, pp. 309–311.) Because there can be no question but that the principal purpose of § 632 is to protect the privacy of confidential communications of California residents while they are in California, we believe it is clear that § 632 was intended, and reasonably must be interpreted, to apply in this setting.

39 Cal.4th 95, 119–20 (2006) (emphasis added). California law simply does not distinguish between the place of the recording (or analysis), when the 'victim' caller is within the state. A person who secretly and intentionally records such a conversation from outside the state <u>effectively acts within California</u> in the same way as a person located in this state.

Here, Plaintiffs allege Defendant continues to examine voices in California without express written consent and seeks to represent a class of California residents that were similarly harmed. Compl. ¶¶ 36, 38. The fact that Defendant recorded and examined calls of California consumers, who spoke within this state, is sufficient to violation section 637.3(a). Nonetheless, Defendant seem to suggest that if the recording device or computers which analyze the voiceprint are not located in California, there can be no violation of section 637.3. This argument is foreclosed by *Kearney* and *Diamond*: an out-of-state business can avoid California law by "shooting someone from over the broad."

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety. Should the Court grant Defendant's Motion in any part, Plaintiffs respectfully requests leave to amend.

DATED: February 3, 2021

Respectfully submitted,

By: /s/*Joshua B. Swigart*

Joshua Brandon Swigart
**SWIGART LAW GROUP, APC**
2221 Camino Del Rio South
Suite 308
San Diego, CA 92108
(866) 219-3343
Fax: (866) 219-8344
Email: josh@swigartlawgroup.com

Daniel G. Shay
**LAW OFFICE OF DANIEL G. SHAY**
2221 Camino Del Rio South
Suite 308
San Diego, CA 92108
(619) 222-7429
Fax: (866) 431-3292
Email: DanielShay@TCPAFDCPA.com

*Attorneys for Plaintiffs
and the Putative Classes*